IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

N.F.
*on behalf of her minor child M.F.*

    Plaintiffs,

v.                                                                           Case No. 14-cv-699 SCY/RHS

ALBUQUERQUE PUBLIC SCHOOLS *et al.*

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Kenneth Jehle's Motions to Dismiss. *Docs. 26, 51*. Defendant asserts qualified immunity and seeks dismissal of Plaintiff's due process, equal protection, unlawful seizure, and state law claims. Having reviewed Defendant's Motions, and being fully advised, the Court finds that the Motions should be **GRANTED** in part and **DENIED** in part**.**

**I.**      **BACKGROUND**

M.F. attends Taft Middle School, a school in the Albuquerque public school system ("APS"), where she mainly receives special education instruction due to a learning disability. *Doc. 49*, First Amended Complaint ("FAC") ¶¶ 4-5, 70-71.[1] Jehle was, at all times relevant for this order, M.F.'s sixth grade English instructor and special education sponsor teacher responsible for helping facilitate M.F.'s curriculum. *Id.* ¶¶ 11-12, 69, 72-73. Plaintiff, M.F.'s mother, alleges that that on several occasions, throughout 2013-2014, Jehle sexually assaulted and harassed M.F. in violation of her constitutional rights. *See generally id.*

---

[1] For the purposes of this order, the Court accepts all of Plaintiff's factual allegations as true.

Specifically, Jehle stared at M.F's buttocks on multiple occasions and once attempted to get her to sit in his lap in a chair he referred to as the "Cuddle Chair." Then, around February 2014, Jehle "cornered" M.F. and lightly slapped her on her stomach, upper thighs, and buttocks. On a separate occasion, he reached into her back pants pocket to quiet a ringing cellphone. Finally, on roughly March 3, 2014, Jehle approached M.F. as she was seated on a railing and, while touching his upper thighs to her knees, dropped a lip gloss in her lap and intentionally slid his hand across her genitals to retrieve it. *Id.* ¶¶ 74-80.  After the lip gloss incident, M.F. and a friend reported Jehle to the Taft Middle School administration. *Id.* ¶ 81.

On or about March 4, 2014, the Taft Middle School administration contacted Plaintiff to inform her of this incident. *Id.* ¶ 82.  The administration sought to have a meeting between Jehle and M.F., but Plaintiff opposed the meeting. *Id.*  On the same day, the administration referred the incident to the Bernalillo County Sheriff's Office ("BCSO") and on March 5, 2014, Taft administration placed Jehle on administrative leave. *Id.* ¶ 83-84.  On April 1, 2014, BCSO arrested Jehle for the crime of Criminal Sexual Contact of a Minor. *Id.* ¶ 85.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief.  Under this Rule, a motion to dismiss "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976) (citing *Jones v. Hopper*, 410 F.2d 1323 (10th Cir. 1969)).  While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Once the court accepts as true well-pleaded factual allegations, it must then consider whether "they plausibly give rise to an entitlement to relief." *Barrett v. Orman*, 373 F. App'x 823, 825 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the Court required to accept as true legal conclusions that are presented as factual allegations. *See Brooks v. Sauceda*, 85 F. Supp. 2d 1115, 1123 (D. Kan. 2000). The Court must, however, view a plaintiff's allegations in the light most favorable to her. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant raises this defense, the burden shifts to the plaintiff to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A right is clearly established "if [t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* The action at issue need not have been previously declared unlawful, but its unlawfulness must be obvious in light of preexisting law. *Beedle v. Wilson*, 422 F.3d 1059 (10th Cir. 2005). Apparent unlawfulness is generally demonstrated when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the

3

law. *Id.* As with other motions to dismiss, to survive a motion to dismiss based on qualified immunity, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 677 (quotation omitted).

### III. PLAINTIFF'S FEDERAL CLAIMS

Plaintiff brings three federal causes of action against Defendant: (1) violation of M.F.'s constitutional right to bodily integrity, (2) violation of M.F.'s constitutional right to equal protection, and (3) violation of M.F.'s constitutional right against illegal seizure. In addition to these federal claims, Plaintiff pleads an alternative state law claim for battery. Defendant asserts that he has qualified immunity with regard to Plaintiff's federal causes of action, and that Plaintiff has failed to state a cause of action under the New Mexico Tort Claims Act. *Docs. 26, 51*. For the following reasons, the Court finds that he should be denied qualified immunity as to Plaintiff's due process and equal protection claims. Furthermore, Defendant is not entitled to qualified immunity on Plaintiff's claims that Defendant unlawfully seized M.F. when he cornered and lightly slapped her and when he subsequently approached her and touched her genitals. The Court will, however, grant Defendant's motion to dismiss the battery claim.

#### A.   Substantive Due Process -- Bodily Integrity

The first issue the Court will address is whether Defendant's alleged mistreatment of M.F. violated M.F.'s Fourteenth Amendment substantive due process right to bodily integrity. As both parties recognize, it is well-settled that a teacher's physical mistreatment of a student offends the substantive protections afforded by the due process clause if this mistreatment rises to "the high level of a brutal and inhuman abuse of official power literally shocking to the conscience." *Abeyta by & Through Martinez v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d

1253, 1257-1258 (10th Cir. 1996). This is a rigorous standard. [2] "To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression." *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013). Moreover, "[t]he behavior complained of must be egregious and outrageous." *Id.* Not every assault committed by a government official violates satisfies this standard. *Williams v. Berney*, 519 F.3d 1216, 1223 (10th Cir. 2008). For instance, the Tenth Circuit has recognized that teacher misconduct that is a "complete abuse of . . . authority" may, nonetheless, fall short of a substantive due process violation. *Abeyta*, 77 F.3d at 1258; *see also Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (a teacher's rubbing of a student's stomach accompanied by a suggestive remark, while "deplorable," was not "of the outrageous and shocking character that is required for a substantive due process violation.").

Here, Defendant acknowledges that the allegations made by Plaintiff are "troubling." *Doc. 51* at 9. Nevertheless, Defendant claims they are not so severe or egregious so as to literally shock the conscience of a federal judge. Plaintiff vigorously disagrees. As she sees it, the Tenth Circuit has "not created a sliding scale of sexual abuse for . . . school students," but has instead held that "all instances of teacher sexual molestation or abuse of a student violate the Due Process Clause." *Doc. 57* at 8. Admittedly, *Abeyta* supports Plaintiff's position, at least on a very

---

[2] In the Response, Plaintiff briefly suggests that, while conduct that "shocks-the-conscience" violates an individual's substantive due process rights, so might less egregious conduct. *Doc. 57* at 11. The Tenth Circuit, however, has repeatedly confirmed that substantive due process claims (with the exception of those involving deprivations of fundamental rights) must be judged under the "shocks-the-conscience" standard. *See*, *e.g.*, *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) ("[T]he ultimate standard for evaluating a substantive due process claim is whether the challenged government action 'shocks the conscience' of federal judges."); *see also Seegmiller v. Laverkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (explaining that there are two strands of substantive due process jurisprudence: one strand jealously guards certain fundamental liberty interests from all but the most indispensable intrusions the other strand protects citizens from the most egregious and conscience shocking tortious conduct of government officials). This is consistent with the approach other courts faced with this question have taken. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996) (holding that there was "no doubt . . . the 'shocks the conscience' standard" applied to substantive due process claims arising from the alleged sexual harassment of three students).

general level. *See Abeyta*, 77 F.3d at 1255 ("Sexual assault or molestation by a school teacher violates a student's substantive due process rights."). However, because *Abeyta* never defines sexual assault or sexual molestation and does not, by its own terms, involve allegations of sexual molestation, Plaintiff's invocation of *Abetya* cannot, standing alone, determine the right outcome in this case.

The Court supposes that one could read *Abeyta's* reference to "sexual molestation" as an affirmation that a teacher's unwelcome sexual contact, no matter how minor, is actionable under the Fourteenth Amendment. But this is not the most natural reading of *Abeyta*, especially given the Tenth Circuit's later discussion, in that case, of how brutal and offensive teacher behavior must be to rise to the level of a due process violation. *See Abeyta*, 77 F.3d at 1257-58 (concluding that a teacher's repeatedly calling a student a prostitute over the course of a month and a half, and inciting the student's classmates to do so as well, did not inflict severe enough psychological harm on the student to violate the due process clause). Unfortunately, the Tenth Circuit has offered little guidance to district courts regarding what sort of inappropriate sexual touching of a student is so egregious and outrageous that it should be considered conscience shocking for the purposes of the Fourteenth Amendment.

Most of the other circuit court cases Plaintiff cites to support her substantive due process claim involve allegations about teacher misconduct that are much more disturbing than those asserted against Defendant. *See Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 722 (3d Cir. 1989) (band director used "physical force, threats of reprisal, intimidation and coercion" to force plaintiff "to engage in various sexual acts"); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 446-49 (5th Cir. 1994) (biology teacher instigated a roughly year-long sexual relationship with a student that began with kissing and heavy petting and escalated to sexual intercourse); *T.E. v.*

6

*Grindle*, 599 F.3d 583 (7th Cir. 2010) (defendant principal did not dispute that band teacher who routinely victimized female students by duct taping them as a "game," touching their privates, including their breasts, rubbing their legs, and, at least according to one student, pressing his penis into her back had violated these students' substantive due process right to bodily integrity). The Court agrees with Defendant that these cases do not provide a helpful benchmark in evaluating Plaintiff's allegations, which are less severe.

The Court turns, therefore, to district court cases, identified by the parties, which address substantive due process sexual molestation claims in the school context. Plaintiff cites both *Vigil v. Mesa Vista Cons. Sch. Dist.*, No. Civ. 97-cv-00151 BB/JHG (D.N.M. December 19, 1997) and *Gilliam v. USD No. 244 Sch. Dist.*, 397 F.Supp.2d 1282 (D.Kan. 2005) to support her argument that the due process clause protects school children from all forms of sexual abuse. In *Vigil*, District Court Judge Bruce D. Black denied a teacher's motion to dismiss a female student's substantive due process claim where the student alleged that the teacher sexually propositioned her (including inviting her to share a hotel room with him), attempted to hug and kiss her on more than one occasion, and on another occasion picked her up and spun her around. *Vigil*, Doc. 44 at 2-3, 10-11. Judge Black found that these allegations stated a claim for the intrusion of the student's substantive due process right to bodily integrity. *Id.* at 11.

In *Gilliam*, on the other hand, District Court Judge John W. Lungstrum granted a teacher's motion to dismiss a female student's substantive due process claim where the student alleged that the teacher sexually harassed her by giving her compliments and gifts not provided to other students, putting his arm around her, leaning over her desk and touching her, taking out a Valentine's Day advertisement in the high school newspaper addressed to her, and then "approach[ing] her from behind, lean[ing] into her pressing his torso into her back, and

7

whisper[ing] in her ear, 'you know you do make my heart sing.'" *Gilliam*, 397 F.Supp.2d at 1284-86. Unlike the district court in *Vigil*, Judge Lungstrum found that this conduct did not violate the due process clause. He specifically reasoned that the unwanted touching at issue did not constitute sexual molestation under *Abeyta* and did not meet the heightened "shocks the conscience" standard. *Id.* at 1287-88. When compared with *Vigil*, *Gilliam* arguably reveals a divergent reaction to what level of inappropriate and unwelcome, sexually motivated contact is constitutionally actionable.

At least one other district court judge in this district has struggled with this issue. *See Sh.A. v. Tucumcari Public Schools*, No. 00-cv-00727 JP/DJS-ACE (D.N.M. October 17, 2001). In *Tucumcari*, two male students sued their fifth grade teacher for inappropriately rubbing their backs and chests underneath their shirts and running his hand underneath their shorts from their knees up their thighs. One of these students specifically testified that the teacher had extended his hand under his shorts "almost to the point of where his leg [met] his body." *Id.* at 3. Despite these allegations, District Court Judge James A. Parker granted summary judgment in favor of the teacher on the student's substantive due process claims. Judge Parker acknowledged that the teacher's actions may have been sexually motivated, but reasoned that the touching did not involve the children's "intimately private areas" and was not overtly sexual in nature. *Id.* at 4,9. Like the Court in *Gilliam* and unlike the Court in *Vigil*, Judge Parker specifically considered the "shocks-the-conscience" standard. *Id.* at 9 (finding that the teacher's alleged actions were "not brutal, they do not shock the conscience, and they do not amount to inhuman conduct or conduct offensive to human dignity").

The parties have directed the Court's to one other useful case study: *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716 (6th Cir. 1996). It contains perhaps the most valuable example

8

of the line between tortious, but not unconstitutional, teacher mistreatment of a student and the type of egregious sexual abuse of a student that violates the due process clause. In *Lillard*, three female high school students filed suit against their science teacher/soccer coach. The first student alleged that the coach had slapped her; the second alleged that the coach rubbed her stomach while making a suggestive remark; finally, the third alleged that the coach had placed his hands between her breasts and fondled her buttocks. *Id.* at 719-21. Applying the "shocks-the-conscience" standard, the district court found that the first two students had not stated a substantive due process claim, but that the third had. *Id.* at 721-22. On appeal, the Sixth Circuit confirmed that the slapping and stomach rubbing fell "far short of 'brutal,' or 'inhumane,' or any of the other adjectives employed to describe an act so vicious as to constitute a violation of substantive due process." *Id.* at 725-26. The district court's denial of the teacher's motion to dismiss the third student's claims was not appealed and was, therefore, not addressed by the Sixth Circuit. *See generally id.*

Taken as a whole, the above cases can be read to embody certain general principles: (1) a teacher's sexually motivated, unwelcome physical contact with a student is not necessarily conscience shocking, (2) inappropriate touching of a student is much more likely to be actionable under the due process clause if it involves the touching of certain erogenous zones, such as the genitals, the breasts, or the buttocks, (3) similarly, teacher abuse is more likely to be considered brutal, inhumane, and conscience shocking if it happens more than once or repeatedly occurs over a long period of time. Applying these guidelines to the case at hand, the Court concludes that much of what Plaintiff alleges would not, standing alone, constitute a substantive due process violation. For example, Plaintiff's allegations of nonphysical harassment consist of M.F.'s fellow-students telling her that Defendant was staring at her buttocks and of Defendant

9

informing M.F.'s mother that male students found M.F. attractive. While undoubtedly upsetting for M.F., this does not rise to a high enough level to violate her substantive due process rights. *See*, *Abeyta*, 77 F.3d at 1257-58. Similarly, Defendant's alleged attempts to have M.F. sit in the "Cuddle Chair," and his removal of a ringing cellphone from her pocket are not obviously sexual in nature. Plaintiff's allegation that Defendant lightly slapped M.F.'s buttocks, stomach, and upper thighs on one occasion is more troubling, although less overtly sexual than the teacher's skin-on-skin rubbing of his students' chests and legs in *Tucumcari*. Most problematic, of course, is the allegation that Defendant intentionally slid his hands across M.F.'s genitals. This fits most naturally within the definition of sexual molestation. It is also, as presented in the complaint, the culmination of a series of escalating incidents of sexual misconduct directed towards M.F. For this reason, the Court finds that Plaintiff's allegations, considered in the aggregate, are sufficiently egregious, offensive, and shocking to survive Defendant's motion to dismiss Plaintiff's substantive due process claim.

In making this determination, the Court is particularly sensitive to the procedural posture of the case. At this stage in the proceedings, the Court must view the complaint in the light most favorable to Plaintiff. In other words, the Court must not resolve any inherent ambiguities in the facts presented in Defendant's favor. It is enough that the allegations, accepted as true, create a plausible claim for relief. Here, in the context of the complaint, Plaintiff's allegations taken together, and culminating with the allegation that Defendant intentionally touched M.F.'s genitals, satisfies this standard. While the Court is not convinced that every sexually motivated touching of a student's crotch area, no matter how minor, glancing, or isolated, is conscience shocking, arguments about the exact degree and nature of the touching are better left for summary judgment or trial, after there has been greater development of the facts. To reiterate, if

Defendant stared at M.F.'s buttocks, asked M.F. to sit in the "Cuddle Chair," slapped M.F.'s buttocks, stomach and upper thighs, and then intentionally touched M.F.'s genitals over her clothing, Plaintiff has a plausible substantive due process claim.

Having determined that this alleged conduct states a substantive due process claim, the Court must next consider whether, at the time of the alleged conduct, it was clearly established that the conduct would violate M.F.'s substantive due process rights.  The salient question here is whether the state of the law in 2013-14 gave Defendant fair warning that his alleged treatment of M.F. was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Significantly, fair warning does not require the existence of a previous case that presents the same fact pattern.  It is "clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.*

Well-established precedent in 2013-14 clearly indicates that teachers may be held liable under the Fourteenth Amendment for inappropriate touching of a student's private parts. *See supra pages 7-9*; *see also Doe v. D'Agostino*, 367 F. Supp. 2d 157, 171 (D. Mass. 2005) (discussing substantive due process cases involving sexual touching).  Defendant was on notice in 2013-14 that repeated sexual touching of a sixth grade student, including the touching of that student's genitalia, could constitute a violation of that student's substantive due process rights. Therefore, taking the facts Plaintiff has alleged as true, and drawing all reasonable inferences in Plaintiff's favor, the Court finds, at this point, qualified immunity does not protect Defendant from Plaintiff's substantive due process claim. Defendant's motion for qualified immunity on Count I is, therefore, denied.

### B.      Equal Protection

Plaintiff has also stated a claim for violation of M.F.'s equal protection rights. The Tenth Circuit recognizes that sexual harassment is actionable under § 1983 as a violation of the Equal Protection Clause. *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994). In such a case, the key inquiry is whether the defendant has abused his or her state-given position to discriminate against the plaintiff based on gender. *Id.* Here, Defendant argues that Plaintiff's claims about his alleged misconduct, even if true, are not sufficiently severe or pervasive to support this type of claim. *Doc. 61* at 10. To bolster this position, Defendant cites case law from other circuits holding that a single sexual assault is not an equal protection violation. *Doc. 51 at 19*. These cases, while persuasive, are inapposite in light of the clear Tenth Circuit precedent rejecting Defendant's position. *See Sh.A. ex rel. J.A. v. Tucumcari Mun. Schs.*, 321 F.3d 1285, 1289 (10th Cir. 2003). In *Sh.A.*, the Tenth Circuit held that it was well-established that a teacher's abuse of his authority "for the purpose of [his] own sexual gratification" violated the equal protection clause. As previously discussed, *Sh.A.* involved allegations that a male teacher rubbed the chests and legs of two of his male students. The Tenth Circuit affirmed denial of the teacher's motion for qualified immunity on the students' equal protection claims.

Like in *Sh.A.*, Plaintiff has sufficiently alleged an equal protection claim against Defendant; according to the complaint, Defendant, in his position as a state actor, made inappropriate physical contact with M.F. for his sexual gratification. As to whether M.F.'s right to be free from this conduct was clearly established, the Court need only return to *Sh.A*. There, the Tenth Circuit found that "a reasonable teacher would have known in the spring of 1997 that sexual harassment [in the teacher-on-student context] . . .gives rise to a violation of equal protection. . . ." 321 F.3d at 1289. Given that the conduct at issue in this case is comparable to

12

the conduct in *Sh.A.*, the Court finds that M.F.'s equal protection right is also clearly established. Defendant's motion for qualified immunity on Count III is, therefore, denied.

   **C.**   **Illegal Seizure**

   Plaintiff also brings a Fourth Amendment illegal seizure claim based on Defendant's alleged sexual harassment.  In response, Defendant argues that, even if M.F. did not feel free to leave her classroom, no constitutional violation occurred.  Defendant correctly states that, in considering whether a child has been seized while at school, a court must keep in mind that children generally are not free to leave the school building. *Ebonie S. v. Pueblo Sch. Dist. 60*, 695 F.3d 1051, 1056 (10th Cir. 2012) (recognizing that courts must think of school seizures differently because of the inherent restrictions on liberty in the school context).  Thus, "to qualify as a seizure in the school context, the limitation on the student's freedom of movement must significantly exceed that inherent in every-day, compulsory attendance." *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1251 (10th Cir. 2008).  The question for the Court, then, is whether the alleged assaults on M.F. constitute seizures separate from the seizure inherent to every-day, compulsory attendance.

   In general, a seizure occurs under the Fourth Amendment when "a reasonable person would have believed that he was not free to leave." *Jones v. Hunt*, 410 F.3d 1221, 1225–26 (10th Cir.2005) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)). The Tenth Circuit has identified eight non-exhaustive factors that are relevant to this analysis in the context of officer-citizen interactions:

> 1) the threatening presence of several officers; 2) the brandishing of a weapon by an officer; 3) some physical touching by an officer; 4) use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; 5) prolonged retention of a person's personal effects ...; 6) a request

>to accompany the officer to the station; 7) interaction in a nonpublic place or a small, enclosed place; 8) and absence of other members of the public.

*United States v. Hill,* 199 F.3d 1143 (10th Cir.1999), *United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir.1993) ("we have avoided hard line rules to govern this analysis, and our opinion today should not be interpreted as an exhaustive pronouncement."). These factors are not directly applicable to student-teacher interactions -- for instance, a teacher is unlikely to brandish a weapon at a student. However, *Hill* and *Griffin* do make clear that, in deciding whether there has been a seizure, courts must consider the totality of the circumstances. Moreover, when applying this standard, the Court assumes the perspective of a reasonable child of the same age as the plaintiff. *See Jones*, 410 F.3d at 1226 (finding that a high school student cornered and threatened by police officers while at school was seized for the purposes of the Fourth Amendment both because she would not have felt at liberty either to disobey a school official or leave the police officers' presence during their interaction).

Plaintiff's allegations that Defendant looked at M.F. lasciviously, attempted to entice her into the "Cuddle Chair", and reached into her back pocket do not constitute seizures because Plaintiff has not identified any restriction on M.F.'s liberty. *See Ebonie*, 695 F.3d at 1057 (explaining that where a student's movement was not significantly restricted by a restraining chair because, *inter alia*, she was not attached to the chair and she could remove herself from the restraints, no seizure had occurred). To the extent Plaintiff sought to assert Fourth Amendment claims based on these actions, the claims will be dismissed.

Plaintiff has described two instances where M.F. faced a more significant restriction: first, when Defendant "cornered" her and lightly slapped on her stomach, buttocks, and thigh; and, second, when Defendant pressed his legs into M.F.'s knees and then slid his hand across her genitals while she was sitting on a railing. A sixth-grade student is unlikely to feel free to try and

walk away from an adult teacher who is in a position of authority over the student while that teacher is touching the student, verbally engaging the student, and blocking the student's avenue of departure. Thus, in considering a totality of the circumstances, and drawing all reasonable inferences in favor of Plaintiff, the Court finds a reasonable sixth-grade student would not have felt free to terminate her contact with Defendant. *See Jones*, 410 F.3d at 1226-27; *Pacheco v. Hopmeier*, 770 F.Supp.2d 1174, 11181-82 (D.N.M. 2011). Moreover, the Court finds that these sexually-charged interactions significantly exceed the types of limitations that normally are placed on children in the school environment.

Having determined that Defendant seized M.F., the Court must assess the reasonableness of the seizure. *Herrera v. Santa Fe Pub. Sch.*, 792 F.Supp.2d 1174, 1184 (D.N.M. 2011)(quotation omitted). "[A] seizure need only be justified at its inception and reasonably related in scope to the circumstances which justified the interference in the first place." *Couture*, 535 F.3d at 1250 (citations omitted). For example, in *Couture,* the seizure of a developmentally disabled student in a "time out" room was justified at its inception because "it was not unreasonable for the teachers to send [the student] to a five-minute timeout in the hope of obtaining his cooperation in the future" and related in scope because the "timeouts were employed as a technique for behavioral modification, and the length of time was determined accordingly." *Id.* at 1253; *see also A.B. ex rel. B.S. v. Adams-Arapahoe 28J Sch. Dist.*, 831 F.Supp.2d 1226, 1242-43 (D. Colo. 2011)(holding that the use of restraints on a developmentally disabled child was a reasonable seizure because it furthered a pedagogical purpose and was only employed for short periods of time). Here, no such justification exists; assuming the truth of the allegations in the Complaint, Defendant's seizures of M.F. were entirely for his own sexual gratification. Therefore, the Court finds that qualified immunity does not protect Defendant

from Plaintiff's claims that Defendant seized M.F. when he "cornered" her and when he pressed up against her, dropped lip gloss on her lap, and touched her genitals.

## IV. PLAINTIFF'S STATE LAW CLAIM

Plaintiff also pleads a state law claim for battery as an alternative claim should the Court find that Defendant was not acting in the course of his duties as a state actor. FAC ¶¶ 112-117. Defendant contends that this claim fails because he was acting within the scope of his duties as a public employee at all relevant times, meaning that his actions are governed by the New Mexico Tort Claims Act (NMTCA) and there is no waiver of immunity for intentional torts committed by teachers under the NMTCA. *Doc. 26* at 2.[3] Plaintiff has filed no responsive briefing to Defendant's motion to dismiss this claim.

The NMTCA "delimits the scope of liability for government entities and their employees by: (1) retaining immunity for torts not waived by the TCA; and (2) waiving immunity and recognizing liability, subject to certain protections, for employees acting within their scope of duty." *Celaya v. Hall*, 135, 85 P.3d 239, 242 (2004). Public school teachers are considered public employees covered by the NMTCA. *Garcia v. Albuquerque Pub. Schs. Bd. of Educ.*, 622 P.2d 699, 701-02 (N.M. Ct. App. 1980). A public employee acts within the scope of his duties, even if he or she engages in tortious or criminal activity, so long as "a connection between the public employee's actions at the time of the incident and the duties the public employee was requested, required or authorized to perform." *Seeds v. Lucero*, 113 P.3d 859, 862 (N.M. Ct. App. 2005)(citation and quotation omitted).

Taking Plaintiff's allegations as true, Defendant's alleged batteries of M.F. are deplorable. But, they also occurred in the course of Defendant performing his authorized duties

---

[3] While Defendant's Motion to Dismiss Count IV (*doc. 26*) was filed prior to FAC (*doc. 49*), Plaintiff's battery claim has not changed from the initial Complaint to the FAC except to add the language that it is an alternative claim. The Court will therefore consider this Motion as if it was brought against the FAC.

as her teacher. Because Defendant was acting within the scope of his duties as a public employee, the NMTCA governs Plaintiff's battery claim. As this Court explained in *Gerald v. Locksley*, "[t]hat the New Mexico Legislature expressly allows assault and battery claims against law enforcement officers suggests that they are not otherwise allowed under § 41–4–4." 785 F.Supp.2d 1074, 1135 (D.N.M. 2011). Plaintiff has not asserted any statutory basis for a waiver and the Court knows of no authority that suggests a waiver exists. Therefore, Plaintiff's state law claim must be dismissed.

**IV.   CONCLUSION**

Defendant's Motion to Dismiss Counts I, II, and III of Plaintiff's Complaint on the basis of qualified immunity is DENIED as to Count I and III. With regard to Count II, Defendant's Motion to Dismiss is DENIED as to the allegation that he "cornered" M.F. and the allegation that he pressed up against her, dropped lip gloss on her lap, and touched her genitals. Defendant's Motion to Dismiss with regard to Count II is GRANTED in all other respects. Finally, Defendant's Motion to Dismiss Count IV is GRANTED.

**IT IS SO ORDERED.**

/s/ Steven C. Yarbrough
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE