IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

N.F., on behalf of her minor child, M.F.,

       Plaintiff,

vs.                                No. 1:14-cv-00699 SCY/SMV

ALBUQUERQUE PUBLIC SCHOOLS,
KENNETH JEHLE, STEVE SCULLY
And SAM OBENSHAIN, as public
employees,

       Defendants.

**REPLY IN SUPPORT OF
DEFENDANT SAMUEL OBENSHAIN'S MOTION TO DISMISS**

Defendant Samuel Obenshain, by and through his counsel of record, Yenson, Allen &

Wosick, P.C. (Robert W. Becker and April D. White), hereby submits the following Reply in

Support of his Motion to Dismiss all of Plaintiff's claims against him.

**I.**       **The Inclusion of a Prayer For Punitive Damages Does Not Salvage Plaintiff's
Official Capacity Claims Against Obenshain.**

Obenshain's Motion first argued Plaintiff's claims against him in his official capacity

should be dismissed because they are redundant of Plaintiff's claims against Defendant

Albuquerque Public Schools ("APS").  (Motion [doc. 76] at pp. 3-4).  In her Response, Plaintiff

contends there is no redundancy because she has alleged she is entitled to recover punitive

damages from Obenshain in his official capacity.  (Response [doc. 87] at p. 15).  Citing *Youren*

*v. Tintic School District*, 343 F.3d 1296, 1307 (10th Cir. 2003), Plaintiff argues punitive damages

may be recovered against a public employee in his official capacity.  (Response [doc. 87] at p.

15).  Because those damages may not be recovered from APS, Plaintiff maintains her official

capacity claims against Obenshain are not duplicative of her municipal liability claims against APS. (*Id.*).

In *Youren*, the Tenth Circuit stated that "[t]he fact that municipalities are immune from punitive damages does not, however, mean that individual officials sued in their official capacity are likewise immune." *Id.* However, this ruling was directly criticized by another panel of the Court, which indicated *Youren's* ruling was unlikely to survive *en banc* review. In *Cross Continent Dev., LLC v. Town of Akron, Colo.*, 548 F. App'x 524, 531 (10th Cir. 2013), the issue of whether punitive damages could be recovered from public employees in their official capacities was rendered moot when the case was decided on other grounds. Nevertheless, the Tenth Circuit stated as follows:

> We feel compelled, however, to note our agreement with [the public employee-defendant's] characterization of *Youren* as an anomalous outlier. After all, if "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("It is *not* a suit against the official personally, for the real party in interest is the entity." (emphasis in original)), and "a municipality is immune from punitive damages under 42 U.S.C. § 1983," *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), then individuals sued in their official capacity should be immune from punitive damages as well. The conclusion seems inescapable. Indeed, the force of this reasoning has led courts within our own circuit to ignore *Youren* when dismissing punitive damage claims in official-capacity § 1983 suits. *See, e.g., Fernandez v. Taos Mun. Sch. Bd. of Educ.,* 403 F.Supp.2d 1040, 1043 (D.N.M.2005) (Kelly, J., sitting by designation).

This district is not alone in declining to follow *Youren.* *See e.g. Smith v. Stuteville*, 2014 WL 3557641, at *4 (D. Kan. July 18, 2014); *Murphy v. Spring*, 2013 WL 5172951, at *6 (N.D. Okla. Sept. 12, 2013). Other federal district courts have criticized *Youren's* holding as "not supported by reasoning or citation to authority" and because it "does not appear to have been followed even within the Tenth Circuit." *Riggs v. City of Owensville*, 2010 WL 2681384, at *3 (E.D. Mo. July 2, 2010). Other circuit courts of appeals have held that punitive damages may not be recovered

against a public employee in his or her official capacity.  *See e.g., Powell v. Alexander*, 391 F.3d 1, 23 (1st Cir. 2004); *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996); *Colvin v. McDougall*, 62 F.3d 1316, 1319 (11th Cir. 1995).

A claim against a public employee in his or her official capacity is a claim against the public entity.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  Plaintiff concedes she cannot recover punitive damages from APS.  *See Miller v. City of Mission, Kansas,* 705 F.2d 368, 377 (10th Cir.1983)("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983.")(citation omitted).   The only case that supports Plaintiff's contention that she may recover punitive damages from Obenshain in his official capacity has been resoundingly criticized and disregarded by the district courts of this circuit.  Because punitive damages may not, in fact, be recovered from Obenshain in his official capacity, Plaintiff's claims against Obenshain in his official capacity are redundant of her claims against APS, and should be dismissed.  *See e.g. Vondrak v. City of Las Cruces*, 2009 WL 1300945 at *2, n.1 (D.N.M. Mar. 30, 2009)

## II.    Obenshain Is Qualifiedly Immune From Suit.

### A.    The First Amended Complaint Does Not State a Claim for Supervisory Liability Against Obenshain.

Obenshain may only be held liable under 42 U.S.C. § 1983 on Plaintiff's supervisory liability claims if she has pleaded sufficient facts to plausibly demonstrate:  (1) Obenshain was personally involved in the unconstitutional acts; (2) a causal connection between Obenshain's involvement and the unconstitutional acts; and (3) Obenshain acted with the requisite state of mind.  *Schneider v. City of Grand Junction Police Dep't.*, 717 F.3d 760, 767 (10th Cir. 2013). Plaintiff's Response, while exhaustive in length, is circuitous in its logic and ultimately fails to

identify facts sufficient to establish any of the elements of a claim of supervisory liability against Obenshain.

Distilled to their essence, Plaintiff's claims against Obenshain hinge upon a single allegation: had Obenshain disciplined Jehle or reported Jehle to law enforcement or the public education department during the time Jehle was under Obenshain's supervision, Jehle would have been arrested and/or stripped of his teaching license, could not have been hired as a special education teacher at Taft Middle School, could not have encountered MF, and could not have been in a position to sexually abuse her. This theory of causation is akin to the proverbial West African butterfly flapping its wings, causing the breeze ultimately resulting in the formation of a hurricane: it is far too attenuated to support imposition of liability under § 1983. *Cf. Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 352, 162 N.E. 99, 103 (1928) (Andrews, J., dissenting) ("What we ... mean by the word 'proximate' is, that because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point.").

Plaintiff's theory of causation as it pertains to Obenshain is also inconsistent with other allegations of the First Amended Complaint. Plaintiff contends APS either had no mechanism to identify and exclude teachers alleged to have inappropriate touched children or that APS failed to follow its own policies with respect to the retention of sexually deviant employees. (First Amended Complaint [doc. 49] at ¶¶ 89-90). If, as Plaintiff contends, APS could not identify and exclude teachers like Jehle, or simply did not care whether its teachers had engaged in inappropriate conduct with students, Plaintiff cannot establish that Obenshain's failure to report Jehle had any impact whatsoever on whether Jehle was hired to work at Taft Middle School. For

this reason as well, the First Amended Complaint does not plausibly allege Obenshain's acts or omissions caused the violation of MF's constitutional rights.

In order for liability to attach, the chain of causation from Obenshain's involvement to MF's injuries must be concrete and direct. *See e.g., Martinez v. State of Cal.*, 444 U.S. 277, 285, (1980)(injury "too remote a consequence" of official conduct to impose liability under § 1983). "Although a § 1983 claim has been described as "a species of tort liability, it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Id.* (internal citation and quotation marks omitted).  To hold otherwise would eviscerate *Iqbal*'s distinction between liability predicated on a supervisor's own constitutional violations, which is actionable, and vicarious liability, which is not.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  If the chain of causation is based on speculative inferences, the claim must be dismissed. Because it would be mere speculation to conclude that had Obenshain reported Jehle, Jehle would not have come into contact with MF, the First Amended Complaint fails to state a claim for supervisory liability against Obenshain.

In addition to the failure to adequately allege a causal connection between Obenshain's acts and omissions and Jehle's alleged abuse of MF, Plaintiff has failed to allege sufficient facts to demonstrate Obenshain had the requisite state of mind.  Plaintiff argues in her Response that Obenshain knew Jehle had an "eleven year history of targeting women and young girls for his sexual aggression."  (Response [doc. 87] at p. 18).  This argument is not supported by the allegations of the First Amended Complaint.  The First Amended Complaint alleges Jehle engaged in inappropriate conduct of which Obenshain was aware in 2002.  (First Amended Complaint [doc. 49] at ¶¶ 35-47).  The First Amended Complaint also alleges Obenshain was told by the parents of one of Jehle's students that Jehle had "behaved inappropriately with female

5

students" in 2012 or 2013.  (*Id.* at ¶ 61).  While Plaintiff's arguments suggest a steady stream of incidents by Jehle and disregard by Obenshain spanning more than ten years, the factual allegations of the First Amended Complaint do not support that assertion.

Moreover, the allegations of the First Amended Complaint do not support Plaintiff's contention that Obenshain simply turned a blind eye to all reports of improper behavior by Jehle and "did not take any disciplinary action against Jehle."  (Response [doc. 87] at 21).  Instead, the First Amended Complaint admits a school resource officer was dispatched to conduct an investigation into the allegation that Jehle had injured a female student's arm after the incident was reported to Obenshain.  (First Amended Complaint at ¶¶ 51-52).  Plaintiff also admits Jehle was placed on administrative leave while under Obenshain's supervision after Jehle purportedly struck a student.  (*Id.* at ¶ 56).  Far from demonstrating deliberate indifference, these admissions establish Obenshain did, in fact, take disciplinary action against Jehle and cannot be said to have acted with deliberate indifference.

Plaintiff's Response glosses over almost entirely the requirement that she plead facts to demonstrate Obenshain was personally involved in the constitutional violation.  The First Amended Complaint merely alleges Obenshain knew Jehle had violated the constitutional rights of others and failed to take action.  As a matter of law, these allegations are insufficient to support a claim against Obenshain.  *See Iqbal,* 556 U.S. at 677 (rejecting argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution").  With one exception, all of the cases cited by Plaintiff on the topic of personal involvement predate the Supreme Court's decision in *Iqbal*.[1]  *Iqbal*

---

[1] The only post-*Iqbal* case cited by Plaintiff in the context of her discussion of personal involvement, *A.B. ex rel. B.S. v. Adams-Arapahoe Sch. Dist.*, 831 F.Supp.2d 1226 (D. Colo. 2011), focuses on the question of the official's deliberate indifference, not her personal involvement in the constitutional violation.  *Id.* at p. 1247.  Indeed, that case

specifically rejected the notion that knowledge is sufficient; instead, a supervisor must himself or herself take action for the very purpose of violating the victim's constitutional rights. *Id.* at 677. Thus, the vast majority of the cases cited in Plaintiff's Response are of limited utility. *See Dodds v. Richardson*, 614 F.3d 1185, 1198-99 (10th Cir. 2010).

Obenshain was not Jehle's supervisor at the time Jehle is alleged to have inappropriately touched MF and, therefore, Plaintiff cannot demonstrate Obenshain was directly involved in the alleged unconstitutional acts. In *Dodds*, the Tenth Circuit indicated personal involvement could be found where a supervisor has created, promulgated, implemented or otherwise possesses responsibility for a policy that subjects the plaintiff to a deprivation of her rights. *Dodds*, 614 F.3d at 1198. However, Plaintiff's Response does not identify any policy that was created, promulgated, implemented or otherwise within Obenshain's responsibility. Given this omission, the First Amended Complaint does not allege facts from which it could be found that Obenshain violated MF's constitutional rights. Obenshain is qualifiedly immune from suit, and Plaintiff's claims against him must be dismissed.

B.   The Law Was Not Clearly Established.

Obenshain should also be dismissed as a party-Defendant herein because the law was not clearly established at the time of the alleged violation of MF's rights. Although Plaintiff's Response correctly notes there need not "be a case presenting the exact fact situation at hand" in order to find the law was clearly established (Response [doc. 87] at p. 26), "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992).

contains no discussion of whether a principal's failure to act could be a sufficient basis upon which to impose supervisory liability following *Iqbal*.

Plaintiff has not directed the Court to a single case from *any* jurisdiction in which a school principal has been held liable for acts perpetrated by a teacher who is no longer under his or her supervision.   Indeed, Plaintiff has not directed the Court to a single case from any jurisdiction in which a supervisor of *any* kind has been held liable for the unconstitutional acts of a former subordinate employee.   In the absence of such authority, it cannot be said the law was clearly established.   For this reason as well, Obenshain is qualifiedly immune from suit and should be dismissed as a party-Defendant herein.

**III.    Plaintiff Has Not Stated A Claim For Violation of State Law.**

Plaintiff's Response argues she has stated a claim for relief under New Mexico common law against Obenshain because Jehle's conduct toward female students constituted an unreasonably dangerous condition and Obenshain's failure to remedy that dangerous condition caused harm to MF.  (Response [doc. 87] at pp. 33-38).  Therefore, Plaintiff contends immunity has been waived pursuant to NMSA 1978, Section 41-4-6.

First, for the reasons stated in § II.A., *supra*, Obenshain's alleged misconduct is too remote from the injury to MF for it to be regarded as a legal cause of MF's damages.   No reasonable jury could find for Plaintiff on her negligence claim against Obenshain and, therefore, the claim should be dismissed.  *Calkins v. Cox Estates,* 110 N.M. 59, 65 n. 6, 792 P.2d 36, 42 n. 6 (1990) ("A court may decide questions of negligence and proximate cause, if no facts are presented that could allow a reasonable jury to find proximate cause[.]")

Second, while it is true Section 41-4-6 applies to circumstances beyond physical defects in public buildings, the interpretation of Section 41-4-6 proposed by Plaintiff goes far beyond the scope of the waiver that has been recognized by the New Mexico courts.  Section 41-4-6 states

that the immunity provided in the NMTCA "does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building." "[I]t is not unfair to say the New Mexico courts have followed a winding and tortured path in interpreting" Section 41-4-6. *State ex rel. Dep't of Corrections v. Watts*, 177 P.3d 793, 800 (Wyo. 2008).  As a consequence, the decisions that control this Court's analysis are not easily distilled into black letter rules regarding when the building waiver provision applies.

There are few reported decisions in which an appellate court has examined the question of whether the Section 41-4-6 waiver applies where the injury did not occur on property within the control of the public entity or employee who has been sued.  The first case, *Bober v. New Mexico State Fair*, 111 N.M. 644, 808 P.2d 614 (1991), involved allegations that the New Mexico State Fair was negligent in failing to protect the public traveling on Louisiana Boulevard from the traffic exiting the fairgrounds after attending a large rock concert at Tingley Coliseum. The Fair asserted it was immune from suit under the NMTCA.  The Supreme Court rejected the Fair's argument, finding that the building waiver provision applied.  *Id.* at 653, 808 P.2d at 623. The Court held Section 41-4-6 "contemplates waiver of immunity where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous or defective condition on property owned and operated by the government."  *Id.*  Subsequent case law has limited *Bober* by noting that the Fair's alleged negligence threatened the public at large (i.e., motorists traveling on Louisiana Boulevard adjacent to the fairgrounds), not merely a small class of users. *See Espinosa v Town of Taos*, 120 N.M. 680, 683, 905 P.2d 718, 721 (1995).

The requirement that the alleged negligence create a dangerous condition that threatens the general public, not merely a small class of users, was reiterated in *Lessen v. City of*

*Albuquerque*, 2008-NMCA-085, 144 N.M. 314, 187 P.3d 179, *cert. denied*.  There, Decedent was arrested and booked into the Metropolitan Detention Center ("MDC").  *Id.* ¶ 3.  During his medical evaluation, Decedent disclosed he was a heroin user and had prescriptions for Valium and hydrocodone, and so was transferred to the detoxification unit of the facility.  *Id.* Decedent exhibited bizarre behavior throughout the night, but his vital signs were "fine."  *Id.* ¶¶ 3-4.  The following evening, he was released and placed into a transport van to be delivered to downtown Albuquerque.  *Id.* ¶ 5.  Decedent then got out of the van, walked back into the facility, and was released with three other inmates through a different door.  *Id.* ¶ 5.  MDC policy provided that anyone released from the facility take van transportation unless he signed a release and had alternate transportation.  *Id.* ¶ 6.  Only one of the inmates who left MDC with Decedent had a waiver.  *Id.*.  Decedent did not have alternate transportation, and he died of hypothermia in an arroyo near Interstate 40.  *Id.* ¶ 8.

The City asserted it was immune from suit for the estate's wrongful death claims under the NMTCA.  Decedent's estate argued immunity was waived under Section 41-4-6 because the City failed to ensure that released inmates had proper transportation.  *Id.* ¶¶ 18-27.  The Court of Appeals rejected the estate's arguments, noting it failed to identify the danger to which released inmates were exposed.  *Id.* ¶ 25.  Although Decedent himself encountered danger when he wandered away from MDC and declined to seek assistance for himself, the record did not reflect this was a danger to which all released inmates were exposed.  *Id.*  On the contrary, there was evidence that two of the other inmates who were released with Decedent walked to a gas station and used the phone to obtain a ride.  *Id.*  "At most, MDC's employees' permitting Decedent to exit to the parking lot without a transportation waiver, a circumstance not established to pose a danger to the general population of released inmates, was a 'single discrete administrative

decision affecting only a single person, as opposed to a dangerous condition affecting the general public.'" *Id.* ¶ 27 (*quoting Upton*, 2006-NMSC-040, ¶ 17).  Accordingly, there was no waiver to immunity under Section 41-4-6.

The most recent reported opinion to discuss the application of Section 41-4-6 is *Encinias v. Whitener Law Firm*, 2013-NMSC-045.  In that case, Student was badly beaten by a classmate. *Id.* ¶ 2.  The attack took place off school property, but on a street the school had cordoned off so that students could patronize food vendors there.  *Id.*  Student produced an affidavit from an assistant principal stating that the area where the vendor trucks parked was a hot zone for potential trouble around the school.  *Id.* ¶ 13.  Hot zones were locations where students congregate and where there has been a history of problems, such as fights.  *Id.*  Student also produced evidence that the area was not monitored by security cameras and that the security guards and teachers assigned to monitor the area were not present at the time of the attack.  *Id.* ¶ 18.

The issue before the Court in *Encinias* was whether Student had a viable legal malpractice claim against Law Firm for its failure to timely file a lawsuit against the school district.  Law Firm argued the malpractice claim was properly dismissed by the district court on summary judgment because the school district was immune from suit under the NMTCA and, therefore, the failure to timely file a lawsuit did not result in any loss to Student.  Student argued he had a viable legal malpractice claim because the school district's immunity was waived under Section 41-4-6.  The Supreme Court held the affidavit of the assistant principal was sufficient to raise questions about the degree of student violence and the school district's efforts to discover and prevent student violence in that area.  *Id.* ¶ 18.  Thus, there was a genuine issue of fact regarding the presence of a dangerous condition at the school that precluded entry of summary

11

judgment for Law Firm on Student's legal malpractice claim.

*Archibeque v. Moya*, 1993-NMSC-079, 116 N.M. 616, 866 P.2d 344, is also instructive. There, the question presented was whether Section 41-4-6 waived immunity for a prison intake officer's negligence in releasing an inmate into the general prison population with a known and disclosed enemy.  The Supreme Court reiterated that the critical inquiry is whether the public employee's action posed harm to the general public as opposed to a single individual.  Id. at ¶ 11. Thus, while the misclassification of the plaintiff put him at risk, it did not create an unsafe condition on the prison premises as to the general prison population.  The Court cautioned that "[r]eading Section 41-4-6 to waive immunity every time a public employee's negligence creates a risk of harm for a single individual would subvert the purpose of the [NMTCA], which recognizes that government, acting for the public good, should not have the duty to do everything that might be done and limits government liability accordingly."  *Id.* (citations and internal quotation marks omitted).

In this case, the only conduct Plaintiff has alleged to link MF's injuries to an alleged dangerous condition created by Obenshain is her assertion that Obenshain failed to discipline Jehle, or to report Jehle to law enforcement or the public education department. As a matter of law, this allegation is insufficient to establish negligence in the operation of a public building such as would support application of the Section 41-4-6 waiver of sovereign immunity.  Indeed, the First Amended Complaint alleges nothing more than a discrete, administrative decision by Obenshain to not report Jehle's conduct.

Despite Plaintiff's attempts to recharacterize her claims, she merely alleged Obenshain was negligent in supervising Jehle.  Sovereign immunity has not been waived for claims of negligent hiring and supervision.  *See Espinoza v. Town of Taos,* 120 N.M. 680, 684, 905 P.2d

718, 722 (1995) (holding that inadequate supervision was not a dangerous "condition" of the playground for which sovereign immunity had been waived because there were no physical defects in the playground where the plaintiff was injured and the park itself was not being managed, operated, or maintained in an unsafe manner); *Upton v. Clovis Mun. Sch. Dist.,* 2006-NMSC-040, ¶ 16, 140 N.M. 205, 141 P.3d 1259 ("[A] complaint alleging nothing more than negligent supervision is not actionable, because the TCA does not specify a tort waiver for negligent supervision.").  There is no waiver of immunity, and Plaintiff's state law claims against Obenshain should be dismissed.

This result is consistent with the purposes of the NMTCA.  The NMTCA represents a balance between the "inherently unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity" and the need to limit the circumstances under which the government may be brought to account.  Section 41-4-2.  Recognition of claims for damages in every instance in which a public employee is alleged to have made an improper or incorrect decision at work would expose public entities to near limitless liability, allowing the exception of waiver to subsume the rule of immunity.

IV.     **Leave To Amend Should Be Denied.**

Plaintiff also argues that in the event the Court determines the First Amended Complaint does not state a claim for relief against Obenshain, she should be granted the opportunity to amend her the Complaint.  However, leave to amend should be denied.  Any amendment would be futile as Plaintiff cannot overcome the lack of a causal connection between Obenshain's supervision of Jehle and Jehle's alleged molestation of MF.  *See Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir.1993)(leave to amend may be refused when the proposed complaint, as amended, would be futile, i.e., subject to dismissal).

WHEREFORE Obenshain respectfully requests that the Court enter an Order granting his

Motion to Dismiss in its entirety, dismissing all of Plaintiff's claims against him with prejudice,

and awarding any such other and further relief as the Court deems just and proper.

YENSON, ALLEN & WOSICK, P.C.
*Electronically Filed*

By:  /s/*April D. White*
        ROBERT W. BECKER
        APRIL D. WHITE
        *Attorneys for Defendant Obenshain*
        4908 Alameda Blvd., NE
        Albuquerque, NM  87113-1736
        (505) 266-3995 / (505) 268-6694 fax
        rbecker@ylawfirm.com
        awhite@ylawfirm.com

**I HEREBY CERTIFY** that on the 27th day of April, 2015, I filed the foregoing electronically through the CM/ECF filing system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Laura Schauer Ives
Kennedy, Kennedy & Ives, LLC
1000 Second Street, NW
Albuquerque, NM  87102
(505) 244-1400
*Attorneys for Plaintiff*

Jennifer Anderson
Megan A. Muirhead
Tomas J. Garcia
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
500 4th Street, NW, Suite 1000
Albuquerque, NM 87102
(505) 848-1800
janderson@modrall.com
mmuirhead@modrall.com
tjg@modrall.com
*Attorneys for Albuquerque Public Schools*

14

Evelyn Howard-Hand
Walsh, Anderson, Gallegos, Green & Trevino P.C.
500 Marquette, NW, Suite 1360
Albuquerque, NM  87102-5312
(505) 243-6864
ehand@wabsa.com
***Attorneys for Steve Scully***

Luis Robles
Lindsay R. Drennan
Robles, Rael and Anaya, P.C.
500 Marquette, NW, Suite 700
Albuquerque, NM  87102-5346
(505) 242-2228
luis@roblesrael.com
***Attorneys for Kenneth Jehle***

***/s/ April D. White***
April D. White

15